FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ DEC 04 2008 ★

BROOKLYN OFFICE

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MICHELANGE LUBIN | § | Case **CV** 08-4953 |
| Plaintiff, | § | |
| v. | § | |
| | § | **PLAINTIFF'S ORIGINAL** |
| METRO CHRYSLER PLYMOUTH INC. | § | **COMPLAINT AND JURY** |
| dba Star Chrysler Jeep Dodge | § | **DEMAND** |
| Defendant | § | |

ROSS, J.

### PLAINTIFF'S ORIGINAL COMPLAINT

J. ORENSTEIN, M.J.

Plaintiff, MICHELANGE LUBIN ("LUBIN" or "Plaintiff") brings suit against Defendant METRO CHRYSLER PLYMOUTH INC. dba Star Chrysler Jeep Dodge ("METRO CHRYSLER"), for violations of the Truth In Lending Act, 15 U.S.C. 1601, *et seq*, the Fair Credit Reporting Act, U.S.C. 1691, *et seq.*, the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691–1691f, and for related claims.

### A.   JURISDICTION AND VENUE

1.      The Court has federal question jurisdiction over the lawsuit under the Truth In Lending Act pursuant to 15 U.S.C. 1640(e); the Fair Credit Reporting Act pursuant to 15 U.S.C. § 1681p; the Equal Credit Opportunity Act pursuant to 15 U.S.C. 1698e(f); and under 28 U.S.C. 1331 in that this dispute involves predominant issues of federal law. Declaratory relief is available pursuant to 28 U.S.C. 2201 and 2202. The court has supplemental jurisdiction under 28 U.S.C. §1367 over Plaintiff's claims state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

1

2.      Venue in this District because all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Queens County, New York.

3.      At all times herein mentioned, defendant, METRO CHRYSLER PLYMOUTH INC. dba Star Chrysler Jeep Dodge STAR CHRYSLER JEEP DODGE ("Star Chrysler") was, and still is, a corporation organized and existing under, and by virtue of, the laws of the State of New York with its principal place of business in Queens County at located at 211-10 Jamaica Ave., Queens Village, NY 11003.

4.      At all times herein mentioned, Plaintiff, MICHELANGE LUBIN, was, and still is, a resident of Kings County, New York.

## B.   STATEMENT OF FACTS AND THEORY OF CASE

5.      On the morning of March 18, 2008 Plaintiff went to Star Chrysler to purchase a vehicle. He decided on a 2008 Jeep Wrangler.

6.      The window sticker for the Wrangler stated the "base price" was $27,490.00 and that the "total price" (including optional items) was $30,785.00.

7.      Defendant's sales staff told Plaintiff that the dealership would sell Plaintiff the vehicle for $27,000.00 "and change," with a $10,000.00 down payment.

8.      The dealership also said it would take Plaintiff's 2002 Volkswagen Jetta as a trade-in and pay the balance remaining on the note for said vehicle.

9.      Based on the dealership's affirmative representations, Plaintiff agreed to trade-in the Jetta and purchase the Wrangler.

2

10.     Plaintiff needed to go to his bank to get the certified check for the downpayment.

11.     The dealership insisted that Plaintiff leave $500.00 with them as consideration for Plaintiff's interest in purchasing the vehicle. Plaintiff gave the dealership $500.00 in cash and went to the bank to obtain a certified check for $9,500.00.

12.     Plaintiff immediately returned to the dealership with the $9,500.00 check and went to sign the papers.

13.     At the last minute the dealership tried a "bait-and-switch" on the vehicle, attempting to substitute a 2007 vehicle for the 2008 he was promised.

14.     The dealership demanded an additional $5,000 down for the purchase of the 2008, even though they promised him the total amount down for the 2008 was just $10,000.

15.     Plaintiff had to get back to work and was very busy with clients calling him on his cell phone the entire time he was at the dealership, so he grudgingly agreed to put an additional $5,000.00 down through his debit card, which the dealership processed.

16.     The $5,000 charge was authorized based on the dealerships express representation that the sales price was $27,000.

17.     After getting to the dealership in the morning, Defendant forced Plaintiff wait until 7:30 or 8:00 PM to sign the final papers. The dealership intentionally dragged out the sales process to wear Plaintiff down so he would just sign whatever they put in front of him. Tired and worn out, Plaintiff signed the papers and left with the vehicle. Again, the only price Plaintiff was quoted

3

for the vehicle was $27,000. At no point was he told anything different about the price of the vehicle.

18.     Despite its express representations to the contrary, the dealership inflated that sales price on the retail installment contract to $41,216.32. In relation to the price it quoted to Plaintiff ($27,000) the sales price on the retail installment contract was inflated by $14,216.32 or *53%!* Even in relation to the window sticker price ($30,875) the sales price on the retail installment contract was inflated by $10,341.32 or 34%.  A copy of the retail installment contract is attached a Exhibit A and a copy of the window sticker is attached as Exhibit B, and are incorporated by reference.

19.     The dealer obtained Plaintiff's signature on the retail installment contract via fraud and misrepresentation of the actual sales price of the Wrangler.

20.     When Plaintiff got home he realized that the dealership had inflated the sales price of the Wrangler.

21.     Immediately the next day, Plaintiff went back to the dealership to revoke/ reject acceptance given the fraudulent inducement of the dealer. Plaintiff returned the Wrangler and demanded the return of the Jetta.

22.     The dealership refused to return the Jetta and threatened Plaintiff. Plaintiff called 911 and the police arrived.

23.     After showing the police the window sticker with the "total price" of $30,785.00 the police advised Plaintiff to seek legal representation as to the dealership.

4

24.    Less than 24 hours has passed between when Plaintiff drove off the lot with the vehicle and when he revoked/ rejected acceptance (by returning the Wrangler and demanding the return of his trade in) was less than 24 hours.

25.    On March 21, 2008, three days after first going to the dealership Plaintiff, acting by and through counsel, sent Defendant a written confirmation of his prior oral revocation/ rejection of acceptance and again made demand for the immediate return of the trade-in vehicle and the downpayment.

26.    Plaintiff sent Defendant an authenticated accounting demand within the meaning of Article 9 of the U.C.C. to attempt to determine what security interest, if any, that Defendant asserted in either the Wrangler or the Jetta, and the amount, if any, Defendant claimed was due. Defendant has not responded to the accounting demand in the manner or within the time required by Article 9 of the U.C.C.

27.    Defendant continues to refuse to return the Jetta.

28.    Defendant now asserts it sold the trade in narrow time period between when Plaintiff drove off with the Wrangler in the evening of March 18, 2008 and the very next day when Plaintiff returned the Wrangler and demanded the return of the Jetta.

29.    On information and belief, Defendant has never sold the trade in Jetta.

30.    In the alternative, also on information and belief, Defendant sold the trade in Jetta *after* Plaintiff revoked/ rejected acceptance on March 19, 2008.

5

31.     On information and belief, Defendant paid the balance of the note for the Jetta *after* Plaintiff revoked or rejected acceptance on March 19, 2008.

32.     On information and belief, title to the Wrangler has been transferred to Plaintiff. On information and belief Defendant has attempted to remove Plaintiff's name from the title of the Wrangler, but those efforts have failed.

33.     On information and belief, no lienholder is listed on the title to the Wrangler.

34.     After the involvement of counsel for Plaintiff, Defendant dealership now asserts that the Jetta trade in was "upside down" (i.e. that the balance of the note on the Jetta was greater than the vehicles' market value).

35.     Defendant now asserts that the number that it listed on the retail installment contract as the "trade in value," $14,500, was in fact not the trade in value.

36.     Defendant now asserts that the $14,500 amount that it listed as the "trade in value" was substantially inflated to cover (and slightly exceed) the $14,150 balance owed on the Jetta.

37.     Defendant dealership now asserts that it "rolled in" an alleged negative equity of the Jetta trade in into the sales price of the Wrangler, thus dramatically increasing the sales price of the Wrangler by 54% from what Plaintiff asserts he was quoted, and by 34% over the window sticker price.

38.     The above list of misrepresentations by the dealership are only by example, and not limitation.

6

39.     There are two alternative theories in this case. One possibility is that there is a valid, enforceable retail installment contract between Plaintiff and the dealership. The other possibility is that there is no enforceable contract. Either possibility, however, leads to liability for Defendant. The following causes of action are brought in the alternative to the degree they are mutually exclusive.

## C.    Count 1—Violations of the Truth in Lending Act and Regulation Z

40.     Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as though set forth fully and at length herein.

41.     Star Chrysler regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments.

42.     Star Chrysler is the entity to whom the retail installment contract was initially payable on its face.

43.     Star Chrysler is a creditor within the meaning of the T.I.L.A., 15 U.S.C. § 1602(f) and Reg Z § 226.2(a)(17).

44.     The contract lists a motor vehicle, an article of personal property, as collateral.

45.     The contract is a written agreement payable in more than four installments.

46.     The contract is a consumer credit transaction within the meaning of the T.I.L.A., 15 U.S.C. § 1602, and Reg Z § 226.2.

7

47.     The finance charge indicated on the contract exceeds $1,000.

48.     Prior to consummating the contract, Star Chrysler did not provide Plaintiff with the T.I.L.A. disclosures in a form that the consumer may keep.

49.     The disclosures provided by Star Chrysler did not conform with the dealership's obligations under the T.I.L.A. and Regulation Z.

50.     Star Chrysler violated 15 U.S.C. § 1638(a) and Reg Z § 226.18.

51.     Star Chrysler violated 15 U.S.C. § 1638(b) and Reg Z § 226.17(b).

52.     WHEREFORE, Plaintiff pray for judgment against Star Chrysler for violating the Truth In Lending Act and Regulation Z, pursuant to 15 U.S.C. § 1640(a), statutory damages, costs and reasonable attorneys' fees; all equitable relief to which Plaintiff may be justly entitled; and such other and further relief as this Court deems appropriate.

### D.      Count 2—Violations of the Fair Credit Reporting Act

53.     Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as though set forth fully and at length herein.

54.     Plaintiff is a "consumer," as defined by the F.C.R.A., 15 U.S.C. § 1681a(c).

55.     Star Chrysler is a "person," as defined by the F.C.R.A., U.S.C. § 1681a(b).

56.     Star Chrysler's failure to extend credit to Plaintiff was an "adverse action" within the meaning of the F.C.R.A. , 15 U.S.C. § 1681a(k).

8

57.     Star Chrysler's failure to extend Plaintiff credit was based, at least in part, on information it obtained from Plaintiff's consumer report.

58.     Star Chrysler knew or had reason to know that it was required to provide Plaintiff with an adverse action notice pursuant to the F.C.R.A., 15 U.S.C. § 1681m.

59.     Star Chrysler received from one or more consumer reporting agencies a written notice of Star Chrysler's obligation to provide said adverse action notice to Plaintiff.

60.     Star Chrysler failed to provide the notice of adverse action required by the F.C.R.A., 15 U.S.C. § 1681m.

61.     Star Chrysler's actions were intentional and willful or, in the alternative, negligent.

62.     WHEREFORE Plaintiff demands judgment against Defendant for actual damages, statutory damages, exemplary and punitive damages, attorney's fees and costs, injunctive relief, and all relief in law and equity to which Plaintiff may be entitled.

### E.     Count 3—Violations of the Equal Credit Opportunity Act

63.     Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as though set forth fully and at length herein.

64.     Plaintiff is an applicant, as defined by the E.C.O.A., 15 U.S.C. § 1591a(b), and REG B § 202.2(e).

65.     Star Chrysler is a creditor, as defined by E.C.O.A., 15 U.S.C. § 1591a(e), and REG B § 202.2(l).

66.     On information and belief, Plaintiff submitted to Star Chrysler, for credit, a completed application, within the meaning of the E.C.O.A. and as defined by REG B § 202.2(f).

67.     Star Chrysler intentionally, or in the alternative negligently, failed to provide Plaintiff a statement of reasons for such adverse action, as required by E.C.O.A., 15 U.S.C. § 1591(d)(2).

68.     Dealer acted on more than 150 credit applications during calendar year 2007.

69.     Dealer acted on more than 150 retail installment contracts during calendar year 2007.

70.     Star Chrysler's failure to extend credit was an "adverse action" within the meaning of E.C.O.A., 15 U.S.C. § 1691(d).

71.     Star Chrysler failed to provide the notice of adverse action required by E.C.O.A., 15 U.S.C. § 1691(d).

72.     For its violations of E.C.O.A., Star Chrysler is liable to Plaintiff for actual damages, punitive damages of up to $10,000, and reasonable attorney fees, litigation expenses and costs under 15 U.S.C. § 1691e.

73.     WHEREFORE, Plaintiff demands entry of judgment for actual damages, punitive damages, costs and reasonable attorneys' fees, and for equitable and declaratory relief pursuant to 15 U.S.C. § 1691e against Defendant for violating the Equal Credit Opportunity Act and Regulation B.

## F.     Count 4—Conversion

74.     Plaintiff repeats and realleges each and every allegation contained in the above

10

paragraphs as though set forth fully and at length herein.

75.     Defendant did unlawfully take possession of Plaintiff's Jetta and/or Wrangler, items of chattel.

76.     Subsequent to Defendant's unlawful taking, Plaintiff demanded Defendant deliver the chattel and the Defendant has refused to do so and has ever since wrongfully detained and converted the chattel, and still detains it. Defendant has and continues to exercise wrongful dominion and control over said chattel, or has allowed others to exercise wrongful dominion and control over said chattel.

77.     By reason Defendant's wrongful detention and conversion of the chattel, Plaintiff has sustained damages.

78.     WHEREFORE, Plaintiff demands entry of judgment against Defendant for actual, exemplary and punitive damages, and attorney's fees and costs.

### G.     Count 5—Deceptive Trace Practices DECEPTIVE TRADE PRACTICES, N.Y. Gen. Bus. Law § 349(h).

79.     Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as though set forth fully and at length herein.

80.     Defendant Star Chrysler committed deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349(a).

81.     Plaintiff is a person who has been injured by reason of plaintiff's deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349(h).

82.     Plaintiff brings suit pursuant to N.Y. Gen. Bus. Law § 349(h).

83.     Plaintiff has suffered damages by reason of Defendant's deceptive acts or practices.

84.     Plaintiff seeks to enjoin defendant's deceptive acts or practices. Plaintiff has no adequate remedy at law.

85.     Plaintiff further seeks treble damages, statutory damages, and reasonable attorney's fees.

86.     WHEREFORE Plaintiff demands entry of judgment against Defendant for actual, treble, exemplary and punitive damages, attorney's fees and costs and injunctive relief.

## H.     Count 6—Violations of the U.C.C.

87.     Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as though set forth fully and at length herein.

88.     Defendant is liable for statutory damages under Article 9 of the Uniform Commercial Code for retaining possession of the Wrangler and/or Jetta when Plaintiff was not in default.

89.     Plaintiff made an authenticated accounting request within the meaning of the Article 9 of the U.C.C. for both the Wrangler and the Jetta, but did not receive any accounting, much less an accounting within the time or in the manner required by law. Under U.C.C. § 9.210 Defendant was required to provide a written accounting of the amount of unpaid obligations it alleged Plaintiff owed for the Wrangler and/ or Jetta within 14 days of receiving a written request for an accounting.

90.     On information and belief Defendant has sold the Wrangler and/ or the Jetta.

12

91.     For the vehicle Defendant sold, if any, Defendant did not provide the pre-disposition notice nor the post-disposition accounting required by Article 9 of the U.C.C.

92.     For Defendant's U.C.C. violations Plaintiff may choose minimum statutory damages of the finance charge, plus either 10 % of the cash price, or 10 % of the loan principal. In either case, Plaintiff is entitled to an additional $500.00 for each of Defendant's U.C.C. violations.

93.     WHEREFORE, Plaintiff demands entry of judgment against Defendant for actual and statutory damages, exemplary and punitive damages, attorney's fees and costs and injunctive relief.

### I.     Count 7—Fraud

94.     Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as though set forth fully and at length herein.

95.     Defendant made material and false representations When Defendant made the representations, it knew them to be false, or made the representations recklessly, as a positive assertion, and without knowledge of its truth. Defendant made the representations with the intent that Plaintiff act on them. Plaintiff in fact relied on the representations, causing his injury. Plaintiff seeks actual, exemplary and punitive damages for these acts.

96.     WHEREFORE, Plaintiff demands entry of judgment against Defendant for actual and statutory damages, exemplary and punitive damages, attorney's fees and costs and injunctive relief.

### J.     Count 8—Negligence & gross negligence, including

13

### negligent misrepresentation.

97.     Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as though set forth fully and at length herein.

98.     Defendant owed a legal duty to Plaintiff.  Without limitation this includes the duty to use ordinary care in making representations and ascertaining the accuracy of information of information given to others, and the duty to use reasonable care in performing services. Defendant breached its legal duty, and the breach proximately causing Plaintiff harm.  Defendant is also liable for negligent hiring, training, supervision or retention of competent employees. Plaintiff brings these negligence claims in addition to the above causes of action, or, to the degree that the negligence claims are inconsistent with the above claims, the negligence claims are brought in the alternative to the above claims. Plaintiff seeks actually, exemplary and punitive damages for these acts.

99.     WHEREFORE, Plaintiff demands entry of judgment against Defendant for actual and statutory damages, exemplary and punitive damages, attorney's fees and costs and injunctive relief.

### K.    ATTORNEY'S FEES

100.  Plaintiff seeks reasonable attorney's fees and costs.

### L.    JURY DEMAND

101.  Plaintiff demands trial by jury.

### M.    PRAYER

102.  For these reasons, Plaintiff asks for judgment against METRO CHRYSLER

14

PLYMOUTH INC. dba Star Chrysler Jeep Dodge for the following:.

    i.    The above referenced relief requested;

    ii.    Actual damages;

    iii.    Statutory damages;

    iv.    Treble, exemplary and punitive damages;

    v.    Attorney fees and expenses;

    vi.    Costs of court;

    vii.    Prejudgment and post-judgment interest as allowed by law;

    viii.    Costs of suit;

    ix.    General relief;

    x.    An injunction preventing Defendant from engaging in similar unlawful conduct now and in the future;

    xi.    All other relief, in law and in equity, both special and general, to which Plaintiff may be justly entitled.

Respectfully submitted,

Ahmad Keshavarz
Attorney for Plaintiff

State of NEW YORK Bar Number: 24012957

THE LAW OFFICES OF AHMAD KESHAVARZ
16 Court St., Suite 2600
Brooklyn, NY 11241-1026
    Phone: (718) 522-7900
    Fax:    (877) 496-7809 (toll-free)
    Email: ahmad@NewYorkConsumerAttorney.com

# Exhibit A:

Retail Installment Contract
March 18, 2008

FORM NYS23SLC-28 (Rev. 3/07)

## RETAIL INSTALMENT CONTRACT

**Meaning Of Some Words:** In this Contract, the words "I," "me" "we" and "my" mean anyone signing this Contract as a Buyer. The words "you" and "your" mean the Seller or, after the Seller transfers its rights under this Contract, anyone having those rights.

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | Amount Financed The amount of credit provided to me or on my behalf. | Total of Payments The amount I will have paid after I have made all scheduled payments. | Total Sale Price The total cost of my purchase on credit, including my downpayment |
|---|---|---|---|---|
| %  | $ | $ | $ | of $ <br> $ |

My Payment Schedule will be:                                                     e means estimate

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | $ 571.74 | Monthly, beginning 05/02/2008 |
|  | $ N/A |  |

**Security:** I am giving a security interest in the motor vehicle being purchased.
Filing Fees: $ _____ N/A
Late Charge: If a payment is late more than 10 days, I will be charged 5% of the payment.
Prepayment: If I pay off early, I will not have to pay a penalty.

My Contract documents will have additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.

In this Contract, you are the Seller.

STAR CHRYSLER JEEP DODGE
211-10 JAMAICA AV    QUEENS VILLAGE NY 11428

| Name | Address | Zip Code |

This Contract is between Seller and Buyer. All disclosures have been made by Seller. Seller intends to assign this Contract.

We are the Buyer(s).

MICHELANGE LUBIN
754 RIFTON ST    FLUSHING NY 11003

| Name(s) | Address(es) | Zip Code(s) |

If there is more than one Buyer, each of us will be obligated, separately and together, for all sums due you and the performance of all agreements as provided in this Contract.

Description of Vehicle: (See Insurance Requirements section)

Acct No. _____
Date   MARCH 18th   2008

| N/U | Year and Make | Series | Body Style | No. Cyl. | Truck Ton Capacity | Serial Number |
|---|---|---|---|---|---|---|
| NEW | 2008 JEEP WRANGLER FOUR DR UNLIMI | | | 6 | 4240 | 1J4GA59128L635087 |

Equipped with:  __A.T.   __P.S.   __AM-FM Radio   Other _____
__A.C.   __P.B.   __P.W.

I have traded in the following vehicle:   2002 VOLKSWAGEN JETTA

| Year and Make | Description |

Property Insurance: I am required to obtain and maintain insurance on the Vehicle, endorsed to protect you as loss-payee, BUT I MAY CHOOSE THE AGENT OR BROKER OF MY CHOICE.

TITLE HOLDER OF COLLATERAL: ___ MICHELANGE LUBIN ___   REGISTRANT: ___ MICHELANGE LUBIN ___
PHYSICAL DAMAGE: Comprehensive $ _____ N/A _____, deductible. Collision $ _____ N/A _____ deductible.
INSURANCE COMPANY: __639 GEICO__   Policy Number: _2017023900_   Effective Date _03/18/2008_
AGENT: Name _____   Address _____   Telephone Number: _____
I guarantee that the required insurance coverage as shown in the Insurance Requirements section was obtained from the agent named above.
**Liability insurance coverage for bodily injury and property damage is not included or provided for in this Contract.**

Vendor's Single Interest Insurance: If this is checked ___, you require Vendor's Single Interest Insurance. I may choose the person through whom Vendor's Single Interest Insurance is to be obtained. This insurance is for the sole protection of the Assignee and my interest is not covered. If obtained through you, the cost of such insurance is $ _____ N/A _____

Promise to Pay: I promise to pay to you (the "Assignee") the Total Sale Price for the Vehicle by making the Cash Downpayment, and assigning the Trade-In, if shown above, on or before the date of this Contract and paying you the Amount Financed plus the credit service charge (called "interest") in this Contract at the Annual Percentage Rate shown above. I promise to make payments on or before the payment due dates shown above.

### WACHOVIA DEALER SERVICES

(the "Assignee")

| Itemization of Amount Financed | | |
|---|---|---|
| Cash Price | $ | 41216.32 |
| Cash Downpayment | −$ | 15000.00 |
| Trade-In | | |
| Value of Trade-In | −$ | 14500.00 |
| Lien Payoff to: __CONDOR__ | +$ | 14150.00 |
| Unpaid Cash Price Balance | | |
| 1 | =$ | 25866.32 |
| To Credit Insurance Company | | * |
| 2 | +$ | N/A |
| To Property Insurance Company | | |
| 3 | +$ | N/A |
| To Public Officials | | |
| 4 | +$ | 135.00 |
| To | | * |
| 5 | +$ | N/A |
| To  ST OF NY | | * |
| 6 | +$ | 12.50 |
| To  N/A | | * |
| 7 | +$ | N/A |
| Amount Financed | | |
| (1 thru 7)=$ | | 26013.82 |

\* You may be retaining a portion of these amounts.

### REQUEST AND SCHEDULE OF GROUP INSURANCE

I understand that Group Credit Life Insurance and Group Credit Accident and Health Insurance are voluntary and are not required to obtain this loan. I further understand that I may select another insurer to provide this coverage.
If I choose to become insured, I understand that insurance will be provided in accordance with the certificate of group insurance that will be given to me. I also reserve the right to terminate my coverage at any time by notifying you in writing. The cost of insurance for the entire term of this Contract is shown below.

___ I WANT optional Group Credit Life Insurance.
___ WE WANT optional Group Credit Joint Life Insurance.
___ I WANT optional Group Accident and Health Insurance.

$ _____ N/A
$ _____ N/A
$ _____ N/A

Insured Buyer's present age _____
Insured Co-Buyer's present age _____

Signature of Buyer _____

Signature of Co-Buyer (for Joint Life Only) _____

Insurer: _____ N/A

Max. Amt. of Ins.: _____ N/A

I AGREE THAT THE PROVISIONS ON THE BACK ARE PART OF THIS CONTRACT. (Continued on reverse side.)

**The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.**

NOTICE TO THE BUYER: 1. Do not sign this Agreement before you read it or if it contains any blank space. 2. You are entitled to a completely filled-in copy of this Agreement. 3. Under the law, you have the right to pay off in advance the full amount due. If you do so, you may, depending on the nature of the credit service charge, either: (a) prepay without penalty, or (b) under certain circumstances obtain a rebate of the credit service charge. 4. According to law, you have the privilege of purchasing insurance on the motor vehicle provided for in this Contract from an agent or broker of your own selection.

Seller agrees to this Contract, including terms and conditions on back, and assigns it to the Assignee in accordance with the first Assignment printed on the reverse side, unless otherwise marked.

I HAVE RECEIVED A COPY OF THIS CONTRACT SIGNED BY THE SELLER. RETAIL INSTALMENT CONTRACT.

Seller ___ STAR CHRYSLER JEEP DODGE ___
(Firm Name)

Buyer _____

By _____

Co-Buyer _____

---

**CO-SIGNER NOTICE**

I agree to pay the debt identified in the Contract as the "Total of Payments," although I may not personally receive any property, services or money. I may be sued for payment, although the person who receives the property, services or money is capable of paying the debt. I should know that the Total of Payments listed above does not include Finance Charges resulting from delinquency, late charges, repossession or foreclosure costs, court costs or attorney's fees, or other charges that are stated in the Contract. I will also have to pay some or all of these costs and charges as required by the terms of the Contract. This notice is not the writing that obligates me to pay the debt. I have read the Retail Instalment Contract, which contains the exact terms of my obligation, and the Co-Signer(s) Notice.

CO-SIGNER: I SHOULD READ THE CO-SIGNER NOTICE, ABOVE, BEFORE SIGNING THE CO-SIGNER'S AGREEMENT.
CO-SIGNER'S AGREEMENT AND ACKNOWLEDGEMENT OF RECEIPT OF CO-SIGNER NOTICE: I (we), the person (or persons) by signing below as "Co-Signer," do 2 things. #1 I (we) acknowledge that I (we) have read and been given a completed copy of the Co-Signer Notice and of each writing that obligates me or the Buyer on the Contract and #2 I (we) promise to pay to you all sums due on this Contract and to perform all agreements in this Contract. I intend to be legally bound by all the terms of this Contract, separately and together, with the Buyer. I am making this promise to induce you to make this Contract with the Buyer, even though you will use the proceeds only for the Buyer's benefit. I agree to pay even though You may not have made any prior demand for payment on the Buyer or exercised your security interest. I also acknowledge receiving a completed copy of this Contract.

X _____
Co-Signer's Signature

_____
Co-Signer's Signature

BANCONSUMER FORM NYS23SLC-28 (Rev. 3/07)

NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.

1. ORIGINAL • 2. BUYER'S COPY • 3. BANK FILE COPY • 4. DEALER'S COPY

2007 BANCONSUMER SERVICE, INC

Security Agreement-
security interest
events of
prior

# Exhibit B:

Window Sticker

## 2008 MODEL YEAR



# WRANGLER UNLIMITED SAHARA 4X4

**Go Anywhere
Do Anything (TM)**

THIS VEHICLE IS MANUFACTURED TO MEET SPECIFIC UNITED STATES REQUIREMENTS. THIS VEHICLE IS NOT MANUFACTURED FOR SALE OR REGISTRATION OUTSIDE OF THE UNITED STATES.

MANUFACTURER'S SUGGESTED RETAIL PRICE OF THIS MODEL INCLUDING DEALER PREPARATION

► **Base Price:     $27,490** ◄

**JEEP WRANGLER UNLIMITED SAHARA 4X4**
**Exterior Color:** Red Rock Crystal Pearl Coat Exterior Paint
**Interior Color:** Dk Slate Gray/Medium Slate Gray Interior Colors
**Interior:** Prem Cloth w/Adjust Head Rest & YES Essentials(R)
**Engine:** 3.8-Liter V6 SMPI Engine
**Transmission:** 4-Speed Automatic Transmission

**STANDARD EQUIPMENT** (UNLESS REPLACED BY OPTIONAL EQUIPMENT)

FUNCTIONAL / SAFETY  FEATURES
Advanced Multistage Front Air Bags
Electronic Stability Program
Traction Control
Electronic Roll Mitigation
4-Wheel Disc Anti-Lock Brakes
3.21 Axle Ratio
Next Generation Dana 44 Heavy Duty Rear Axle
Command-Trac(R) Shift-on-the-Fly 4WD System
Heavy-Duty Suspension with Gas Shocks
Transfer Case Skid Plate Shield
Fuel Tank Skid Plate Shield
Speed Control
Sentry Key(R) Theft Deterrent System
Two Front Tow Hooks and One Rear Tow Hook
Variable Intermittent Windshield Wipers
Tire Pressure Monitoring Warning Signal

INTERIOR FEATURES
Air Conditioning
Power Windows with Front One-Touch-Down Feature
Power Locks
Remote Keyless Entry
AM/FM Stereo Radio w/In-Dash CD Plyr/MP3 Capability
368W 7-Speaker Infinity(R) Sound Sys Incl Subwoofer
SIRIUS(R) Satellite Radio
1-Year Service Provided by SIRIUS(R)
For More Information, Call 1-888-539-7474
Reclining Front Seats
Height-Adjustable Driver's Seat
YES Essentials(R) Stain/Odor Resistant Seat Fabric
Security Alarm
Premium Instrument Cluster with Tachometer
Temperature and Compass Gauge
Tilt Steering Column

Auxiliary 12-Volt Power Outlet
Sport Bar with Full Padding
Rear 60/40 Split Folding Seat
Rear Compartment Covered Storage
Leather Steering Wheel with Bright Spokes
Bright Interior Accents
Front and Rear Floor Mats

EXTERIOR FEATURES
18" x 7.5" Machined Cast Aluminum Wheels
P255/70R18 OWL On-/Off-Road Tires
Sunrider(R) Soft Top
Tubular Side Steps
Fog Lamps
Halogen Headlamps
Swing-Away Mirrors
Deep Tint Sunscreen Windows

| **OPTIONAL EQUIPMENT** | |
|---|---|
| Red Rock Crystal Pearl Coat Exterior Paint | $225 |
| **Customer Preferred Package 24G** | |
| Dual Top Group | $1,585 |
|     Freedom Top(TM) 3-Piece Modular Hard Top | |
|     Rear Window Wiper/Washer | |
|     Rear Window Defroster | |
| 4-Speed Automatic Transmission | $825 |
|     3.73 Axle Ratio | |
|     Automatic Transmission Skid Plate | |
| Freedom Top(TM) 3-Piece Modular Hard Top - Black | NO CHARGE |
| **DESTINATION CHARGE** | **$660** |

► **TOTAL PRICE: * $30,785** ◄

**WARRANTY COVERAGE**
Lifetime Powertrain Limited Warranty.
3-year or 36,000-mile Basic Limited Warranty.
3-year or 36,000-mile 24-hour towing assistance.
Certain restrictions apply. Ask Dealer for a copy of the limited warranties or see your owner's manual for details.



Assembly Point/Port of Entry: TOLEDO, OHIO, U.S.A.
VIN: 1J4GA591X8L-536902          LA-VON: 7522     1106

SHIPTO:    28504  31
WARNOCK DODGE CHRYSLER JEEP OF
111 RIDGEDALE AVE
MORRISTOWN        NJ  07960-4267

SOLDTO:    32   28504
WARNOCK DODGE CHRYSLER JEEP OF
111 RIDGEDALE AVE
MORRISTOWN        NJ  07960-4267

THIS LABEL IS ADDED TO THIS VEHICLE TO COMPLY WITH FEDERAL LAW. THE LABEL CANNOT BE REMOVED OR ALTERED PRIOR TO DELIVERY TO THE ULTIMATE PURCHASER.
* STATE AND/OR LOCAL TAXES IF ANY, LICENSE AND TITLE FEES AND DEALER SUPPLIED AND INSTALLED OPTIONS AND ACCESSORIES ARE NOT INCLUDED IN THIS PRICE. DISCOUNT, IF ANY, IS BASED ON PRICE OF OPTIONS IF PURCHASED SEPARATELY.

Here are your Policy Identification Cards. Two cards have been provided for each vehicle insured. One ID card must be physically located in the proper insured vehicle. The duplicate card is for use when applying for new tags. Please destroy your old ID cards when the new cards become effective.

Notify us promptly of any change in your address to be sure you receive all important policy documents. Prompt notification will enable us to serve you better.

Your policy is recorded under the name and policy number shown on the card.



**FS-20**

Phone Number: 1-800-841-3000

**GEICO** geico.com    NEW YORK STATE INSURANCE IDENTIFICATION CARD

| Policy Number | Effective Date | | Expiration Date | |
|---|---|---|---|---|
| 4072-77-81-47 | 12/11/2008 | (12:01 A.M.) | 06/11/2009 | (12:01 A.M.) |

An authorized NEW YORK insurer has issued an Owner's Policy of Liability Insurance complying with Article 6 (Motor Vehicle Financial Security Act) of the NEW YORK Vehicle and Traffic Law to:

(Not acceptable to obtain registration after 45 days from effective date.)

KESHAVARZ-ARSHADI,A

Applicable with respect to the following Motor Vehicle:

| 2006 | VOLKS | NEW BEETLE |
|---|---|---|
| Year | Make | Model |

16 COURT ST S2600
BROOKLYN NY 11241

3VWRE31Y16M324704
Vehicle Identification Number

Name & Address of issuer:
GOVERNMENT EMPLOYEES INSURANCE COMPANY    Company Code: 148
One GEICO Plaza,
Washington, DC 20076-0001

AHMAD KESHAVARZ-ARSHADI
16 COURT ST STE 2600
BROOKLYN NY 11241-1026



FAX INSTRUCTIONS
1. The entire page must be faxed.
2. If submitted to DMV, either the entire page or the second ID card and large scanable bar code will be retained.
3. A faxed ID card must be replaced with a scanable ID card within 14 days of the effective date.
4. DMV will not accept a faxed ID card without a scanable barcode.

FAX: Scanable Bar Code



**ATTENTION:**

**Please compare the Vehicle Identification Number (VIN) on your vehicle to your proof of insurance (ID) cards and registration. All three must match.**

Contact us if corrections to your cards are necessary.

Contact the Department of Motor Vehicles (DMV) for corrections to your registration.

**FS-20**

Phone Number: 1-800-841-3000

**GEICO** geico.com    NEW YORK STATE INSURANCE IDENTIFICATION CARD

| Policy Number | Effective Date | | Expiration Date | |
|---|---|---|---|---|
| 4072-77-81-47 | 12/11/2008 | (12:01 A.M.) | 06/11/2009 | (12:01 A.M.) |

An authorized NEW YORK insurer has issued an Owner's Policy of Liability Insurance complying with Article 6 (Motor Vehicle Financial Security Act) of the NEW YORK Vehicle and Traffic Law to:

(Not acceptable to obtain registration after 45 days from effective date.)

KESHAVARZ-ARSHADI,A

Applicable with respect to the following Motor Vehicle:

| 2006 | VOLKS | NEW BEETLE |
|---|---|---|
| Year | Make | Model |

16 COURT ST S2600
BROOKLYN NY 11241

3VWRE31Y16M324704
Vehicle Identification Number

Name & Address of issuer:
GOVERNMENT EMPLOYEES INSURANCE COMPANY    Company Code: 148
One GEICO Plaza,
Washington, DC 20076-0001



ES #3031